UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SILVIA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cv-01407-MTS |
| | ) | |
| LVNV FUNDING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This action involving the Fair Debt Collection Practices Act is before the Court on Defendant LVNV Funding, LLC's Motion for Summary Judgment. In its Motion, Defendant asserts that Plaintiff lacks standing and that, even if Plaintiff could establish standing, her FDCPA claim fails on the merits. Because standing is jurisdictional, the Court addresses the issue first and concludes that Plaintiff does, in fact, lack standing. For that reason, the Court will dismiss this action for want of jurisdiction.

**I.      Legal Standard**

"It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *See City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007); *accord White Knight Diner, LLC v. Owners Ins. Co.*, 552 F. Supp. 3d 853, 859 (E.D. Mo. 2021), *aff'd*, 70 F.4th 453 (8th Cir. 2023). Therefore, the Court first addresses Defendant's assertion that Plaintiff lacks standing to pursue her claims. Standing to sue is a doctrine that "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 338 (2016). It requires a plaintiff to have a "'personal stake'" in the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).

The Supreme Court has explained that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Since these three elements of standing are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *City of Clarkson Valley*, 495 F.3d at 569 (quoting *Lujan*, 504 U.S. at 561). "In response to a summary judgment motion," a plaintiff "can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" that "for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)); *see, e.g.*, *Browning v. Apex Physical Therapy*, 4:19-cv-02395-JAR, 2021 WL 1088100, at *3 (E.D. Mo. Mar. 22, 2021).

Under Federal Rule of Civil Procedure 56(a), "a court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify

the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Id.* (citing *Torgerson v. City of Rochester*, 643 F. 3d 1031, 1042 (8th Cir. 2011) (en banc)); *accord* Fed. R. Civ. P. 56(c)(1).  When the movant does not bear the burden of proof on a claim at trial, the movant may "satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show[1] that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford*, 880 F.3d at 996.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to

---

[1] "A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000).  Rather, a moving party must "point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

## II.  Facts

Plaintiff Silvia Williams owed a debt to Credit One Bank, N.A. In June 2019, she defaulted on that debt by failing to make timely payments. Credit One Bank charged off the account, and Defendant LVNV Funding, LLC became the owner of the account. In April 2020, in an effort "to fix her credit by disputing the majority of her debts listed on her credit report," Plaintiff wrote to TransUnion and Equifax that she disputed the Credit One account that Defendant then owned. Once TransUnion received Plaintiff's dispute letter, it notified Defendant of the dispute. Going forward, Defendant reported the debt to the credit bureaus as disputed with an "XB" code[2] each credit reporting cycle.

In August 2021, Plaintiff's credit score was 521. Her report included ten accounts that were in collections along with five accounts that were charged off. The following month, in September 2021, Defendant received[3] a letter from Gary Hansz of Credit Repair Lawyers of America in Michigan. The letter stated that his firm "represent[ed] Silvia Williams," who had "discovered . . . inaccurate information in [her] credit file." Doc. [70] ¶ 11. It explained that Plaintiff "no longer dispute[d]" Defendant's account, and it asked that "the dispute comment" be "remove[d]" "from the account." *Id.* Credit

---

[2] The Credit Reporting Resource Guide published by the Consumer Data Industry Association defines the "XB" code as: "Reported when the completeness or accuracy of the account information is disputed directly to the data furnisher by the consumer under the FCRA and investigation of the dispute is in progress by the data furnisher." Doc. [70] ¶ 10.

[3] Defendant received the letter through Resurgent Capital Services, L.P., its master servicing agent and attorney in fact for Defendant.

- 4 -

Repair Lawyers did not copy Plaintiff on the letter, and there was no power of attorney from Plaintiff to Credit Repair Lawyers included with the letter. Defendant continued to report the account as disputed with an XB code.

**III.     Discussion**

Defendant points to materials in the record that it says demonstrate that Plaintiff will not be able to show that, (1), she suffered injury in fact, and (2), it was fairly traceable to the challenged conduct. *See Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018) (explaining that, when a defendant challenges a plaintiff's standing on a motion for summary judgment, the plaintiff must "offer evidence in response to [the] summary-judgment motion establishing that [the challenged conduct] injured him").

An "injury in fact" is an "invasion of a legally protected interest" and must be not only "concrete and particularized" but also "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61. A "concrete and particularized inquiry" is required here "even when Congress creates a private cause of action, as it did in the FDCPA." *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 461–62 (8th Cir. 2022); *accord TransUnion*, 594 U.S. at 426 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]").

Plaintiff points to evidence in the record that she says supports three injuries in fact. First, she says the failure to remove the notation had a negative effect on her credit.

Specifically, in her Response in Opposition to the Summary Judgment Motion, Plaintiff writes that she "testified that the failure to remove the inaccurate dispute comment hindered her from getting credit." Doc. [69] at 11. That flagrantly misstates her testimony. In her actual testimony, Plaintiff simply notes that she has been turned down for credit. *See* Doc. [62-1] at 17. When asked if she knows whether the disputed account at issue here was factored into her credit score in some way, she admits that she "do[es]n't know about the credit and how it works like that" because she is "not an expert." *Id.* She simply thinks, as a "general point," a "disputed account is like a sore" or "a blemish," and "any blemish is not good." *Id.*; *accord id.* at 16–17 (testifying that it was "[j]ust [her] own personal thought" that her credit score decreased in part because of the dispute). Plaintiff has not put forward any evidence that the inaccurate dispute comment hindered her ability to receive credit. She has pointed to no evidence that any lender denied her credit in whole or in part over the dispute notation at issue.

Rather, in responding to Defendant's Statement of Uncontroverted Facts, Plaintiff agreed that if an account is reported to be in a collection status, adding a dispute notation to that reported account does *not* raise or lower a consumer's TransUnion reported credit score. Doc. [70] ¶ 22. In addition, she agreed that, provided no other changes are made to the reported consumer credit information, simply removing a dispute notation from an account does *not* increase a credit score. *Id.* ¶ 23. Plaintiff even agreed that "the act of adding a dispute notation or removing a dispute notation alone to a reported account has *no* direct effect on the calculation of a consumer's credit score." *Id.* ¶ 24 (emphasis added).

And Plaintiff consistently testified that when entities have turned her down for loans or given her or offered her unfavorable terms it was because of her abysmal credit score. *See, e.g.*, Doc. [62-1] at 19 (testifying lenders "said [she] can't get the loan because of [her] credit score"); *id.* at 25 (testifying that the manager of a car dealership told her that the interest rate on her loan was as high as it was "because of [her] credit score"). Plaintiff has not pointed to *any* evidence that Defendant's failure to remove the dispute notation affected her creditworthiness or her ability to obtain credit. She has shown no concrete or actual injury there that can be traced to Defendant's alleged FDCPA violation.

For her second injury in fact, Plaintiff points to her testimony about the "emotional distress and stress as she is trying to clean up her credit." Doc. [69] at 11.[4] These harms are intangible ones. *See* Rachel Bayefsky, *Constitutional Injury and Tangibility*, 59 Wm. & Mary L. Rev. 2285, 2343 (2018) ("[E]motional distress is frequently viewed as a paradigmatic form of intangible harm."). "Although tangible injuries are perhaps easier to recognize," the Supreme Court has confirmed in many of its cases "that intangible injuries can nevertheless be concrete." *Spokeo*, 578 U.S. at 340. "In determining whether [Plaintiff's] intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* "The historical analysis asks whether the alleged injury has 'a close relationship to harms traditionally recognized as providing

---

[4] In Plaintiff's Complaint, she alleged that she is "suffer[ing] from anxiety, embarrassment, humiliation, and stress from Defendant's violations of the FDCPA." Doc. [1] ¶ 23.

a basis for lawsuits in American courts.'" *Ojogwu*, 26 F.4th at 462 (quoting *TransUnion*, 141 S. Ct. at 2204).

"[T]he number of causes of action in which a person may recover for emotional harm . . . supports the notion that emotional harm satisfies the 'injury in fact' requirement of constitutional standing." *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 168–69 (5th Cir. 2016); *see also, e.g.*, *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693 (8th Cir. 2017) (finding false representation in court pleadings of the amount of an individual's debt and the false threat to proceed to trial "create the same risks of mental distress traditionally recognized in unjustifiable-litigation torts and that Congress judged sufficient for standing to sue"). But emotional harm does *not* always rise to the level of an injury in fact. The U.S. Court of Appeals for the Eighth Circuit, quoting the Seventh Circuit, has explained that "stress by itself with no physical manifestations and no qualified medical diagnosis" does not amount to "a concrete harm." *Ojogwu*, 26 F.4th at 463 (quoting *Pennell v. Global Trust Management, LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021)); *see also Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (explaining anxiety, embarrassment, and stress following an FDCPA violation do not constitute concrete injuries); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 619–20 (2007) (Scalia, J., concurring in the judgment) (opining that the "conceptualizing of injury in fact in purely mental terms conflicts squarely with the familiar proposition that a plaintiff lacks a concrete and particularized injury when his only complaint is the generalized grievance that the law is being violated"). With that in mind, the Court looks to Plaintiff's evidence about her emotional distress.

Plaintiff's testimony describes the "stress, strain, [and] aggravation" the situation generally has caused her. Doc. [62-1] at 19. She says that it has been "crazy," and that it has caused her "[s]tress on top of stress on top of stress." *Id.* at 19–20. Much of her testimony concerns the garden variety of stress that all individuals experience throughout their lives related to a myriad of issues—the kind that is not a concrete harm. Plaintiff, though, also testifies about her physical health issues. She describes herself as "a sick woman" with "a lot of medical issues going on." *Id.* at 20. She testified about her "uncontrolled" "high blood pressure" along with other "vascular things" including "arterial problems." *Id.* at 20, 23. But Plaintiff points to no evidence of a "qualified medical diagnosis" for any of the conditions that she says has left her in poor health—neither for their existence, their connection to her stress, nor their cause. *See Ojogwu*, 26 F.4th at 463. So, even if the Court can except her testimony that she has these vascular conditions,[5] she has not shown that they were "*caused by* the defendant." *Id.* at 464 (quotation omitted).

Indeed, besides Plaintiff's lay testimony that her ailments are all "because of Credit One," see Doc. [62-1] at 19, she points to no record evidence linking her illnesses with Defendant's conduct or linking her illnesses to the stress it caused, and the Court has seen none in the record. In any event, she testified that her vascular problems arose "as [she] g[o]t older." *Id.* at 20. She added, "I'm sixty-three, I guess issues just come into

---

[5] In some circumstances, a lay person can establish that the symptoms or conditions he or she has experienced are caused by an incident or event. *See Kavanaugh v. Edwards*, 4:19-cv-3256-MTS, 2023 WL 1389151, at *1 (E.D. Mo. Jan. 31, 2023). The Court is skeptical that Plaintiff could support her theory of causation for these conditions in this action without some objective medical evidence.

- 9 -

play." *Id.* She even testified that she did *not* have medical records that show she "sought treatment because of the credit dispute on the account." *Id.* at 21.

What is more, she also testified that the stress she has experienced has not come from the failure to remove the dispute from her credit report but from her poor credit more broadly or from this litigation itself. It was "not so much the disputed issue," Plaintiff testified, but "all of the things surrounding it" and the "fallout from it." *Id.* at 19. Stress over her own debt that "[s]he chose not to pay," however, does not establish a cognizable injury. *See Ojogwu*, 26 F.4th at 463 (quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020)). Nor does stress over this litigation establish a cognizable injury. *Cf. Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes."). When counsel for Defendant asked Plaintiff if she was "saying that [she was] stressed because of this current lawsuit," Plaintiff answered, "Yes. Because of this. You don't know what I've been through. Between the first time when I had to appear[6] until now, even now." Doc. at 19–20. Plaintiff went on to say that "[t]he damages right now, my health right now as far as my blood pressure and all that, since the lawsuit started it has really been out of control." *Id.* at 20. For these reasons, Plaintiff's emotional distress is not a concrete injury traceable to Defendant's alleged violation.

---

[6] Defendant had significant difficulty arranging a deposition of Plaintiff. At one point, Plaintiff appeared for a deposition at the wrong address. *See* Doc. [29] (Defendant's Motion to Compel the Deposition of Plaintiff and Seeking Sanctions); *see also* Doc. [32] (Plaintiff's Response in Opposition discussing Plaintiff's stress about the deposition along with her "overall stress with various things going on in her life").

Finally, for Plaintiff's last effort to establish an injury in fact traceable to Defendant's conduct, Plaintiff asserts that "Defendant's misstatement to the credit reporting agencies (i.e., the dispute notation on her credit report) in and of itself is one of the harms she suffered."  Doc. [69] at 13.  That harm itself, she says, is a concrete injury.  *Id.* (citing *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) ("[T]he reporting of inaccurate information about [someone's] credit—has a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts." (internal quotations omitted))).  But the harm recognized by the publication of defamatory information is reputational harm, and Plaintiff has not at all shown how Defendant's actions harmed her reputation.

"Under longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party."  *TransUnion LLC*, 594 U.S. at 432 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990)).  Plaintiff did not explain how the dispute notation, which she admits caused *no* effect on her credit score, subjected her to hatred, contempt, or ridicule.  Thus, "even assuming" Defendant violated the FDCPA by misrepresenting that Plaintiff disputed the debt, the Court finds itself "unable to identify any harm to come from that violation."  *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 870 (6th Cir. 2020).  The Court is "at a loss for how [the dispute notation] caused any harm, much less harm that Congress intended to prevent when it enacted the FDCPA."  *Id.*  Because Plaintiff failed to show Defendant's misrepresentation caused harm to her reputation or good

name, her final assertion of an injury in fact also fails. *See Defamation*, *Black's Law Dictionary* (11th ed. 2019) ("Malicious or groundless harm to the reputation or good name of another by the making of a false statement to a third person.").

## IV. Conclusion

"This case begins and ends with standing." *Carney v. Adams*, 592 U.S. 53, 58 (2020). Because Plaintiff has not shown she suffered an injury in fact fairly traceable to the challenged conduct of Defendant, she has not shown she has standing to litigate this action. Without standing, the Court is without jurisdiction. *See Bensinger v. Denbury Res. Inc.*, 561 F. App'x 24, 25 (2d Cir. 2014) (per curiam) ("It is axiomatic that, without injury, a plaintiff has no standing, and federal courts have no jurisdiction to decide the case."). Finding itself without jurisdiction, the Court must dismiss this action without prejudice. *See Azarax, Inc. v. Syverson*, 990 F.3d 648, 654 (8th Cir. 2021).

Accordingly, an Order of Dismissal will be entered herewith.

Dated this 20th day of March 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE